UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| AILLET, FENNER, JOLLY & McCLELLAND, INC. | CIVIL ACTION NO. 09-cv-2016 |
| VERSUS | JUDGE STAGG |
| U. L. COLEMAN CO., LTD, ET AL | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Aillet, Fenner, Jolly & McClelland, Inc. ("AFJM") is a professional engineering firm that prepared civil engineering drawings for U. L. Coleman Co., Ltd. ("Coleman") in connection with the Walker Place development that Coleman planned to build in Bossier City. Coleman gave the drawings to Neel-Schaffer, Inc. ("NSI"), which modified the AFJM drawings for Coleman to use on the project. Coleman later fired AFJM as engineer for the project. AFJM and Coleman are involved in state court litigation about the amount, if any, Coleman owes AFJM for its work.

AFJM filed this action against Coleman, NSI, and others for copyright infringement based on the use of the designs prepared by AFJM. Before the court are motions to dismiss (Docs. 18 and 26) filed by Coleman and NSI pursuant to Fed. R. Civ. Pro. 12(b)(6). Both movants argue that AFJM's complaint is barred because AFJM granted Coleman an implied license to use the drawings in connection with the project. Coleman also challenges the adequacy of the complaint with respect to certain elements of the infringement claims.

Finally, both movants challenge the right of AFJM to recover the statutory damages and attorney fees prayed for in the complaint. It is recommended, for the reasons that follow, that the motions to dismiss be granted as to the claims for statutory damages and attorney fees but be denied in all other respects.

**The Alleged Facts**

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007). Accordingly, the facts set forth in the complaint will be fairly summarized below.

Mark Snow, a principal engineer with professional engineering firm AFJM, began providing professional civil engineering services to Coleman in connection with the Walker Place development to be located in Bossier City. The services began in 2004, and they were rendered pursuant to an oral agreement. Complaint, ¶ 9.

AFJM, in 2006, delivered to Coleman civil engineering drawings in connection with the Walker Place Apartments and the related municipal roadway and utility infrastructure plans for the development. ¶ 10. A fee dispute developed between AFJM and Coleman that same year, and in January 2007 AFJM filed suit against Coleman in state court for more than $300,000 in allegedly unpaid professional engineering fees. ¶¶ 11-12.

It appears AFJM nonetheless continued to work on the design plans. The final set of plans delivered by AFJM for the apartment complex are dated June 2008, and its final plans for the roadway and utility infrastructure are dated December 2008. ¶¶ 13-14.

Coleman hired NSI in October 2008 to review the AFJM plans and determine whether the design could be value engineered to reduce the cost of the construction by reducing the site elevations, grades, and use of utility infrastructure. Coleman provided NSI with copies of the AFJM plans. ¶ 17. An NSI engineer reported to Coleman his opinion that several components of the plan could be refined to lower the grade of the proposed building pads without detrimental effect. ¶ 18. Coleman retained NSI in November 2008 to modify the AFJM designs for the Walker Place apartments, municipal roadway, and utility infrastructure to include a modification of the drainage design and facilitate a lowering of the site elevations. ¶ 19.

The agreement between Coleman and NSI included that Coleman would provide NSI the AFJM plans, with the understanding that the original baseline site plan drawn by AFJM – including site geometrics for the layout of the buildings and roadways – would remain as shown on the AFJM plans. Coleman provided NSI with hard copies and PDF copies of the AFJM plans, and AFJM alleges upon information and belief that NSI also obtained AutoCad or electronic copies of the AFJM plans. NSI then used, copied and adapted portions of the AFJM plans into its work. Neither Coleman nor NSI obtained the authorization of AFJM to use or copy the AFJM plans. ¶¶ 20-23.

Coleman continued to direct AFJM to revise its plans as late as December 2008, but AFJM was not aware that Coleman had recently retained NSI to review the AFJM plans. NSI delivered to Coleman its final plans in April and May of 2009. Those plans "resemble

and are substantially similar in appearance to the AFJM plans, and in some respects they are exact copies of the AFJM plans." Coleman terminated AFJM as engineer of record on May 20, 2009. It was not until that month that AFJM was informed that NIS had undertaken the review of its plans. ¶¶ 24-29.

On the same day Coleman terminated AFJM as engineer, Coleman filed a reconventional demand in the state court suit and alleged that the AFJM plans were of no value in light of Coleman's retention of NSI. ¶ 30. Notwithstanding Coleman's use of the AFJM plans, including the use of the plans by NSI, Coleman contends that it does not owe AFJM any compensation for its professional engineering services. ¶¶ 30-32. Later, in September 2009, AFJM registered its drawings with the United States Copyright Office. ¶ 15.

**Implied License**

The Copyright Act requires that exclusive licenses be evidenced by a writing. 17 U.S.C. § 204(a). A non-exclusive license, however, may be granted orally or implied from conduct. Lulirama, Ltd., Inc. v. Axcess Broadcast Services, Inc., 128 F.3d 872, 879 (5th Cir. 1997).

Coleman and NSI argue that AFJM's copyright infringement claims are defeated because AFJM granted Coleman an implied license to use the plans in connection with the Walker Place project. Several reported decisions have addressed claims of implied non-exclusive license in connection with architectural or other design plans. See, e.g., I.A.E., Inc.

v. Shaver, 74 F.3d 768 (7th Cir. 1996), John G. Danielson, Inc. v. Winchester-Conant Properties, Inc., 322 F.3d 26 (1st Cir. 2003), and Juergens v. Watt, 2009 WL 1375976 (N.D. Miss. 2009), aff'd without opinion, 381 Fed. Appx. 320 (5th Cir. 2010).

A non-exclusive license results when "the totality of the parties' conduct indicates an intent to grant such permission." Lulirama, 128 F.3d at 879, quoting Nimmer on Copyright, § 10.03[a]. The Lulirama court noted that other circuits have held that an implied non-exclusive license arises when three factors are present: (1) a person (the licensee) requests the creation of a work (2), the creator (the licensor) makes the particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee copy and distribute his work. Lulirama, 128 F.3d at 879; Campbell v. Smythe, 2001 WL 1131783 (5th Cir. 2001) (applying the three factor test).

The courts have interpreted the "copy and distribute" prong of the test to mean that the creator of the protected work must intend that its copyrighted drawings be used on the project for which they were created, independent of the creator's involvement. Nelson-Salabes, Inc. v. Morningside Development, LLC, 284 F.3d 505, 515 (4th Cir. 2002). In the context of a case such as this one, the Nelson-Salabes case found that the jurisprudence suggests that the existence of an implied non-exclusive license also turns on at least three other factors: (1) whether the parties were engaged in a short-term discrete transaction as opposed to an ongoing relationship, (2) whether the creator used written contracts, such as the standard AIA contract, providing that copyrighted materials could only be used with the

creator's future involvement or express permission, and (3) whether the creator's conduct during the creation or delivery of the copyrighted materials indicated the use of the material without the creator's involvement or consent was permissible. Nelson-Salabes, Inc., 284 F.3d at 516.

The existence of a license, exclusive or non-exclusive, creates an affirmative defense to a claim of copyright infringement. I.A.E., Inc., 74 F.3d at 775; Juergens, 2009 WL 1375976, *9. "Although dismissal under Rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." Epco Carbon Dioxide Products, Inc. v. J. P. Morgan Chase Bank, N.A., 467 F.3d 466, 470 (5th Cir. 2006). Accordingly, the burden is on Coleman and NSI to point to facts in the complaint that satisfy their burden of establishing an implied license, leaving no room for a plausible chance that an implied license was not established.

The complaint does allege that Coleman requested the creation of the plans, and AFJM made the plans and delivered them to Coleman. What is not established beyond question from the basic facts in the complaint is what AFJM *intended* with respect to copying and distribution of its work thereafter. The court does not know what may have been written on the plans, if anything, with regard to distribution, whether there were AIA documents or others that might be relevant to the issue, whether there were any discussions or correspondence among the principals about such matters, or other details about the relevant conduct of the parties. It is not known whether the oral agreement between AFJM and

Coleman contemplated long-term involvement in the project or mere preparation of plans. And the question of payment owed by Coleman in connection with the plans and project is described in the complaint as being the subject of a state court lawsuit. Predictably, the parties disagree over the legal impact of the nonpayment on the license issue. And there is a direct allegation by AFJM that "[N]either Coleman nor [NSI] obtained the authorization of AFJM to use or copy the AFJM Copyrighted Works." Complaint, ¶ 23.

The touchstone for finding an implied license is intent. John G. Danielson, Inc., 322 F.3d at 40. See also Nelson-Salabes, 284 F.3d at 515 (calling intent the "determinative question"). The Danielson case also observed that implied licenses "are found only in narrow circumstances." The bare facts disclosed by AFJM's complaint do not compel a finding in favor of the defendants that there was an implied license so that this case must be dismissed on mere pleadings review. Most of the many cases cited by the parties decided the license defense on a motion for summary judgment or after trial. Movants do cite a Seventh Circuit decision, Kennedy v. National Juvenile Detention Association, 187 F.3d 690 (7th Cir. 1999), for the proposition that a motion to dismiss is an appropriate vehicle for resolving a dispute regarding whether a non-exclusive license negates a claim of copyright infringement. However, that decision based the finding of a license on express language in a written consulting agreement that was attached to the complaint. Perhaps there are cases in which an implied license is revealed on the face of a complaint, but this is not such a case. And a Plaintiff such as AFJM is not required to anticipate an affirmative defense and plead around

it or negate it in its complaint. Flying Food Group, Inc. v. N.L.R.B. 471 F.3d 178, 183 (D.C. Cir. 2006); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1276. Much more must be known about the course of conduct of the parties before the court can make a definitive ruling with respect to this affirmative defense.

**Contributory Infringement**

AFJM alleges that Coleman's acts constitute contributory infringement. Complaint, ¶ 51. "One infringes contributorily by intentionally inducing or encouraging direct infringement." Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 125 S.Ct. 2764, 2776 (2005). Coleman argues that the complaint fails to allege that Coleman intended to induce NSI to infringe any copyright or that Coleman was aware of any copyright.

AFJM responds that the facts it has alleged are adequate to put Coleman on notice of its contributory infringement claim. AFJM's complaint does allege that Coleman provided NSI the AFJM plans and directed NSI to alter them for use on the project. Those facts may permit an inference of specific intent to induce infringement, but it is debatable. AFJM represents in its memorandum that any deficiency in this regard "can easily be cured by an amendment" to allege that Coleman knew that AFJM claimed a copyright in its plans and that AFJM had restricted Coleman from letting another engineer use its work. Based on that representation, the undersigned recommends that Coleman's motion to dismiss this claim be denied, but AFJM should be ordered to file a motion for leave to file its promised amendment within 14 days of the district judge's action on this recommendation. Coleman argues that

AFJM will not be able to make such an allegation. If that is the case, Coleman may again attack this claim. For now, the claim should be permitted to remain.

**Vicarious Infringement**

One infringes vicariously "by profiting from direct infringement while declining to exercise a right to stop or limit it." Grokster, 125 S.Ct. at 2776. AFJM alleges that had NSI not copied the AFJM drawings, Coleman "would have incurred significant costs associated with an original rendering" by NSI of plans for the Walker Place project, "such that there was a direct and immediate financial benefit to Coleman related directly to the infringing activities of [NSI]." Complaint, ¶ 46. Coleman objects that this is a mere formulaic recitation of an element that is too conclusory to pass Rule 12(b)(6) review. The undersigned disagrees and finds that the facts are more than adequate to describe a situation in which Coleman declined to stop NSI from infringing the copyright and profited directly from the infringement. All of the relevant facts may not be found within the confines of ¶ 46, but they are found within the four corners of the complaint.

**Statutory Damages and Attorney Fees**

AFJM prays for an award of statutory damages and attorney fees. Movants argue that these claims must be dismissed based on the provision in 17 U.S.C. § 412 that (subject to inapplicable exception) no award of statutory damages or attorney fees shall be made for infringement in an unpublished work that was commenced before the effective date of registration or, for an infringement that is commenced after first publication but before the

effective date of registration, unless the registration is made within three months after the first publication. Movants point out that AFJM's complaint alleges registration in September 2009, but the complaint does not describe infringements occurring any later than the April 2009 delivery by NSI of its modified plans.

AFJM concedes that it has not alleged facts in its complaint that would entitle it to statutory damages or attorney fees. It requests, however, that the claims not be dismissed because further infringement of the copyright is likely if Coleman obtains its embattled building permit for the project (the subject of a separate lawsuit in this court) and moves forward with the construction. The undersigned recommends that the claims be dismissed based on the lack of any facts in the current complaint that would permit such awards and the lack of representation that any such facts can now be alleged. If AFJM later learns of facts that it believes would entitle it to these remedies, it may move for leave to file a supplemental pleading that sets forth those post-complaint facts. See Fed. R. Civ. Pro. 15(d). The motion would be decided based on the provisions of the scheduling order, prejudice to the defendants, and other relevant factors.

Accordingly;

**IT IS RECOMMENDED** that the **Motions to Dismiss (Docs. 18 and 26)** be **granted in part** by dismissing all claims for statutory damages and attorney fees. It is recommended that the motions be **denied** in all other respects.

**IT IS FURTHER RECOMMENDED** that AFJM file, within 14 days of the district judge's action on this recommendation, a motion for leave to file an amended complaint that addresses the intent issue addressed in this Report and Recommendation.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 31st day of January, 2011.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE