U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

SEP 2 5 2012

TONY R. MOORE, CLERK
BY _____
         DEPUTY

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

---

AILLET, FENNER, JOLLY &
MCCLELLAND, INC.

CIVIL ACTION NO. 09-2016

versus

JUDGE TOM STAGG

U. L. COLEMAN COMPANY, LTD.,
SEQUOIA CONSTRUCTION, L.L.C.
WALKER PLACE, L.L.C. AND
NEEL-SCHAFFER, INC.

---

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by the defendants, U. L. Coleman Company, Ltd., Sequoia Construction, L.L.C., and Walker Place, L.L.C. (hereinafter collectively referred to as "Coleman"), pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Record Document 68. For the reasons set forth below, the defendants' motion for summary judgment is **DENIED**.

### I. BACKGROUND

Aillet, Fenner, Jolly & McClelland, Inc. ("AFJM") filed suit in this court alleging copyright infringement against Coleman and Neel-Schaffer, Inc. ("NSI") based on Coleman's use of civil engineering drawings prepared by AFJM for

Coleman in connection with the Walker Place development that Coleman planned to build in Bossier City.[1] Coleman gave the drawings to NSI, which modified the AFJM drawings for Coleman to use on the Walker Place project. Coleman later fired AFJM as engineer for the project. AFJM dismissed NSI from this suit, but preserved its claim against Coleman. See Record Document 65.

Coleman filed this motion for summary judgment seeking dismissal of AFJM's infringement claim on three grounds. Coleman twice asserts the affirmative defense of license, arguing first that AFJM impliedly granted Coleman a license to use the drawings under the terms of their contract. Second, Coleman contends that Christopher Miller ("Miller"), a Dallas-based landscape architect whom Coleman hired in connection with the project, was a joint author of the drawings and that Miller licensed the drawings to Coleman. Third, Coleman argues that the election of remedies doctrine precludes AFJM from recovering on its copyright claim. See Record Document 68.

---

[1] In 2006, AFJM filed suit against Coleman in state court, alleging breach of contract and open account. The trial court found for AFJM and awarded monetary damages for the amount due under the contract. See Record Document 72, Exs. A, B.

## II. LAW AND ANALYSIS

A.  **Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir.

2002).

## B. Implied License.

Coleman asserts that summary judgment should be granted on the ground that AFJM granted Coleman an implied license to use the drawings. A license authorizing the use of copyrighted material is an affirmative defense to a claim of copyright infringement, and therefore Coleman bears the burden of proving the existence of the license. See Lulirama Ltd., Inc. v. Axcess Broadcast Servs., Inc., 128 F.3d 872, 884 (5th Cir. 1997) (citing CMS Software Design Sys., Inc. v. Info Designs, Inc., 786 F.2d 1246, 1248 (5th Cir. 1986)).

Non-exclusive licenses may be granted orally or implied from conduct. See Lulirama, 128 F.3d at 879. The Fifth Circuit has applied a three factor test for determining the existence of an implied non-exclusive license: (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes the particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work. See id. (quoting I.A.E., Inc., v. Shaver, 74 F.3d 768, 776 (7th Cir. 1996)); Campbell v. Smythe, 273 F.3d 1107 (5th Cir. 2001). The touchstone for finding an implied license is intent. See John G. Danielson, Inc. v. Winchester-Conant Props., Inc., 322 F.3d 26, 40 (1st Cir. 2003).

4

In this case, the first two criteria are clearly satisfied. It is undisputed that Coleman (licensee) requested creation of the civil engineering drawings and that AFJM (licensor) delivered them to Coleman. See Record Document 1 at 2-3. The contested issue here concerns the "copy and distribute" element, whether AFJM intended that Coleman copy and distribute its work.

Coleman contends that AFJM's representations in the state court proceedings demonstrate its intent to license the drawings to Coleman. For instance, when Coleman filed a reconventional demand alleging that the AFJM plans were worthless, AFJM claimed that the plans had value because they could be value-engineered and otherwise used by Coleman. See Record Document 72 at 5.

AFJM maintains that it never granted Coleman permission to use the drawings. See Record Document 72 at 3. It quotes from restrictions it placed on the drawings and also from a deposition in which U. L. Coleman, III, acknowledges AFJM had prohibited Coleman from using them without AFJM's permission. See Record Document 72 at 14-15.

The issue of AFJM's intent is fiercely contested. If factual issues or conflicting inferences exist, the court is not to resolve them; rather, summary judgment must be denied. See Puckett v. Rufenacht, Bromagen & Hertz, Inc., 903 F.2d 1014, 1016 (5th Cir. 1990). Based on the evidence before the court, factual issues exist regarding

AFJM's intent to license the drawings to Coleman, and therefore summary judgment is not warranted.

### C. Joint Work.

Coleman argues that, along with AFJM, Miller co-authored the drawings and that Miller later licensed the drawings to Coleman. Coleman correctly reasons that, as a co-author, Miller had authority to license the use of the entire drawings to Coleman. Each joint author has an undivided interest in the whole work and therefore each author can use or license the work to third parties as he or she wishes. See 17 U.S.C. § 201(a); Thomson v. Larson, 147 F.3d 195, 199; Oddo v. Ries, 743 F.2d 630, 633 (9th Cir. 1984). As previously noted, a license authorizing the use of copyrighted material is an affirmative defense to a claim of copyright infringement, and therefore AFJM bears the burden of proving the existence of the license. See Lulirama, 128 F.3d at 884.

AFJM does not dispute that Miller gave Coleman permission to use the drawings. However, AFJM argues, inter alia, that Miller was not a co-author because he did not sufficiently contribute to the drawings and also that the drawings were not the result of a collaborative effort. See Record Document 72.

The Copyright Act defines a "joint work" as "a work prepared by two or more

6

authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole."[2] 17 U.S.C. § 101. The Fifth Circuit has yet to outline the elements for finding joint authorship under the Act. See Visitor Indus. Publ'ns., Inc. v. NOPG, L.L.C., 91 F.Supp.2d 910, 914 (E.D. La. 2000); BTE v. Bonnecaze, 43 F.Supp.2d 619, 622 (E.D. La. 1999). District courts in the Fifth Circuit addressing this issue have universally followed the guidance of the Second Circuit in Childress v. Taylor, 945 F.2d 500 (2d Cir. 1991) and Thomson v. Larson, 147 F.3d 195 (2d Cir. 1998), as well as the Seventh Circuit in Erickson v. Trinity Theatre, Inc., 13 F.3d 1061, 1068 (7th Cir. 1994). See e.g., Visitor Indus. Publ'ns, Inc., 91 F.Supp.2d 910; Looney Ricks Kiss Architects, Inc. v. Bryan, No. 07-572, 2010 WL 5393859 (W.D. La. Dec. 22, 2010); Wood v. B L Bldg. Co., No. 03-713, 2004 WL 5866352 (S.D. Tex. June 22, 2004); BTE, 43 F.Supp.2d 619; Clogston v. Am. Acad. Of Orthopaedic Surgeons, 930 F.Supp. 1156 (W.D. Tex. 1996). Under the Childress approach, "a co-authorship claimant bears the burden of establishing that each of the putative co-authors (1) made independently copyrightable contributions to the work; and (2) fully intended to be co-authors." Thomson, 147 F.3d at 200 (citing Childress, 945 F.2d at 507-08). The test "ensure[s] that the true collaborators in the creative

---

[2] This definition also defines a work of joint authorship. See 1 Nimmer on Copyright § 6.01 (1991).

process are accorded the perquisites of co-authorship and to guard against the risk that a sole author is denied exclusive authorship status simply because another person rendered some form of assistance." Childress, 845 F.2d at 504. This court believes the Childress test directly resolves the issue of whether Miller and AFJM were co-authors under the meaning of 17 U.S.C § 101. Therefore, like other district courts in the Fifth Circuit, this court adopts the Childress test and will apply it to the facts this case.

An author makes an independently copyrightable contribution to a work when he "translates an idea into a fixed, tangible expression entitled to copyright protection." See BTE, 43 F.Supp. at 626. "Ideas, refinements, and suggestions, standing alone, are not the subjects of copyrights." Erickson, 13 F.3d at 1072. Coleman supports its contention that Miller sufficiently contributed to the drawings with an unsworn declaration given by Miller in which he testifies that he contributed numerous features to the drawings including "roadways, sidewalks, intersection cornering, paving-stone layouts, landscaping, hard-scaping" and others. See Record Document 68, Ex. E. While this evidence clearly establishes that Miller contributed to the drawings, the court cannot determine exactly what Miller contributed because Coleman does not identify Miller's specific contributions, nor do they provide original copies of Miller's works which were allegedly incorporated into AFJM's

final drawings. The jurisprudence is clear that failing to identify specific contributions to a work is fatal to a claim of joint authorship. For example, in Erickson, the court found no joint authorship with regards to certain plays because the actors claiming joint authorship could not identify specific contributions to the playwright's works. 13 F.3d at 1072. Even if Coleman had specifically identified Miller's contributions, Coleman does not even allege that Miller's contributions are separately copyrightable. This court cannot assume on a motion for summary judgment that Miller's contributions were original works worthy of copyright protection. Therefore, Coleman has not established beyond dispute that Miller contributed independently copyrightable materials to the drawings.

Coleman also fails to establish the absence of a genuine dispute as to the intent requirement of Childress, which requires showing that the parties "entertain in their minds the concept of joint authorship." Childress, 945 F.2d at 508. The Second Circuit has said that the intent element does not turn "solely on the parties' own words or professed state of mind," but rather it requires an inquiry into the factual indica of authorship, "such as how a collaborator regarded herself in relation to the work in terms of billing and credit, decision making, and the right to enter into contracts." See Thomson, 147 F.3d at 201 (quoting Childress, 945 F.2d at 508-09). While Miller's declaration attests that Miller and AFJM collaborated on the drawings,

9

Coleman does not show that the parties intended to be joint authors. See Erickson, 13 F.3d at 1069 ("Even if two or more persons collaborate with the intent to create a unitary work, the product will be considered a 'joint work' only if the collaborators can be considered 'authors.'"). Moreover, Coleman does not identify any indica of authorship that would suggest that AFJM and Miller intended to be co-authors. Even if Coleman had sufficiently shown Miller's intent, AFJM's pleadings show that it alone had decision making authority over the final project. See Record Document 72, Ex. 1 at ¶¶ 39-42. Furthermore, AFJM outwardly represented that it was the sole author of the drawings at all times, never billing Miller as a co-author. See Record Document 72, Ex. 1 at ¶¶ 33, 46-49. Thus, a genuine factual dispute exists over whether AFJM considered Miller a co-author of the drawings.

Miller's declaration does not identify what Miller actually contributed and Coleman's pleadings fail to establish that AFJM intended to be a co-author with Miller beyond factual dispute. Therefore, Coleman has not met its burden of establishing the absence of a genuine dispute on the issue of joint authorship.

**D.  Election Of Remedies.**

Finally, Coleman argues that the election of remedies doctrine precludes AFJM from recovering on its copyright infringement claims because AFJM elected to recover against Coleman for the same conduct in its state court breach of contract

claim. Coleman cites <u>MCA Television Ltd. v. Public Interest Corp.</u>, 171 F.3d 1265 (11th Cir. 1999) in support of their argument that AFJM's contract and copyright claims are inconsistent because a copyright infringement claim denies the existence of a contract or a license and a breach of contract claim relies on the existence of a contract or a license. Coleman mischaracterizes AFJM's claims. In its state court breach of contract claim, AFJM sought recovery for Coleman's failure to pay for work requested on an open account. In this suit, AFJM seeks recovery for a separate and distinct wrong, infringement that allegedly occurred after the contract was breached and that is wholly unrelated to the subject matter of the state court proceedings. Therefore, the election of remedies doctrine does not bar AFJM's infringement claims.

### III. CONCLUSION

Based on the foregoing analysis, Coleman's motion for summary judgment is **DENIED**. An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana this 25th day of September, 2012.

JUDGE TOM STAGG